UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

John Doe, ex rel. Sally Doe,    :
        Plaintiff,              :
                                :
v.                              :
                                :    Case No. 3:04cv01452 (JBA)
Derby Board of Education,       :
        Defendant               :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DOC. # 22]

John Doe, on behalf of his minor daughters Jane and Sally
Doe, brought suit against the Derby Board of Education ("Board")
alleging a violation of Title IX of the Educational Amendments of
1972, 20 U.S.C. §§ 1681-1688.  Jane Doe subsequently voluntarily
withdrew her claim, leaving Sally Doe as the sole minor plaintiff
represented by John Doe.  Defendant Board now moves pursuant to
Fed. R. Civ. P. 56 for summary judgment on plaintiff's claim.
See [Doc. # 22].  For the reasons that follow, defendant's motion
will be denied.

I.    Factual Background

In July, 2002, plaintiff Sally Doe, a 13-year-old student at
Derby Middle School, was sexually assaulted by Christopher Porto,
Jr., a 17-year-old student at Derby High School.  See Affidavit
of Sally Doe ("Sally Aff.") [Doc. #29-3] ¶¶ 1-3.  The assault
occurred during summer recess and off school grounds.  See
Deposition of Sally Doe ("Sally Dep.") [Doc. # 24-2] at 27-28.
While it is undisputed that Porto, Jr. was eventually arrested

and charged for the sexual assault of Sally Doe, plaintiff attests he was arrested in August 2002, while defendant Board claims he was not arrested until September 2002. <u>See</u> Sally Aff. ¶ 2; Defendant's Rule 56(a)1 Statement ("56(a)1") [Doc. # 24-1] ¶ 7.

Both Sally Doe and Porto, Jr. returned to school in fall 2002. <u>See</u> Sally Aff. ¶ 4. The record is unclear whether Porto, Jr. missed any school due to the arrest. At the time, Derby High School and Middle School students attended classes in the same building. Although the classes were held separately, students from the high school could interact with students from the middle school, and vice versa. <u>See</u> <u>id</u>. ¶ 3.

John Doe first complained to the school principal, Charles DiCenso, about the sexual assault of his daughter sometime in September, although the precise date is in dispute. <u>See</u> Affidavit of John Doe ("John Aff.") [Doc. # 29-2] ¶¶ 5-6; 56(a)1 ¶ 12. Plaintiff contends that after school started in early September, Sally Doe told her father that Porto, Jr. was still in school. <u>See</u> John Aff. ¶ 5. Outraged, John Doe called the school to complain, and a meeting between John Doe and DiCenso was scheduled for mid-September. <u>See</u> <u>id</u>. ¶ 6. Defendant claims the meeting occurred before the school year started. <u>See</u> 56(a)1 ¶ 12.

Plaintiff maintains that defendant had actual knowledge of the sexual assault soon after Porto, Jr.'s arrest. <u>See</u> Rule 56(a)2 Statement ("56(a)2") [Doc. # 29-1] ¶ 4; John Aff. ¶ 3; Sally Aff. ¶ 4. Plaintiff claims that the investigation and eventual arrest of Porto, Jr. were widely reported in the media. <u>See</u> John Aff. ¶ 3; Sally Aff. ¶ 4. Further, plaintiff argues that defendant must have known of the arrest because Porto, Jr.'s father, Christopher Porto, Sr., was a voting member of defendant Derby Board of Education. <u>See</u> 56(a)2 ¶ 6; John Aff. ¶ 6. Defendant, however, contends it had no actual knowledge of the sexual assault of Sally Doe until John Doe complained to Principal DiCenso. <u>See</u> Affidavit of Charles DiCenso ("DiCenso Aff.") [Doc. # 24-5] ¶ 8; 56(a)1 ¶¶ 16, 20.

In any event, John Doe met with Principal DiCenso sometime in September and demanded that Porto, Jr. be removed from school. <u>See</u> John Aff. ¶ 6. Based on the meeting with John Doe, DiCenso decided to suspend Porto, Jr. for ten days. <u>See</u> DiCenso Aff. ¶ 5. DiCenso allegedly instructed John Doe that in order to initiate expulsion proceedings against Porto, Jr., Sally Doe would need to provide a statement about the sexual assault and cooperate with school authorities. <u>See</u> John Aff. ¶ 6. John Doe told DiCenso that he "would not subject his daughter to that sort of thing and that if [DiCenso] was curious he should obtain the

3

police report from the Derby Police Department." Id.  DiCenso
also allegedly told John Doe that before taking action against
Porto, Jr., he needed to speak with Christopher Porto, Sr., a
member of defendant Board.  See id.

Sally Doe never presented her claims to DiCenso or any
member of the Board and Porto, Jr. was allowed to return to
school after his ten-day suspension.  See DiCenso Aff. ¶ 6.  John
Doe claims that defendant failed to inquire of the Derby Police
about the facts of the sexual assault.  See John Aff. ¶ 6.
Defendant maintains that plaintiff refused to cooperate, and that
it followed the Derby school system's procedural guidelines for
suspension and expulsion.  See DiCenso Aff. ¶ 6.  Dicenso states
that he decided not to pursue expulsion of Porto based on the
advice of counsel.  See id.

Throughout the 2002-2003 school year, Sally Doe was the
victim of off-campus teasing and harassment by Porto, Jr.'s
friends, who spit at her and called her a "slut."  See 56(a)2 ¶
7-10; Sally Aff. ¶¶ 5-6; Sally Dep. at 20, 30.  Although she
states in her affidavit that Porto Jr.'s friends would harass her
both in and out of the school, her deposition testimony
explicitly contradicts this statement, as she testified that she
was subject to harassment by Porto Jr.'s friends "not during
school but out of school," Sally Dep. at 30, and "a party may not

4

create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.  See <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 455 (2d Cir. 1999).  However, as discussed <u>infra</u>, even the evidence of off-campus harassment by Porto, Jr.'s friends is probative of plaintiff's claim.  Sally Doe also claims she frequently saw Porto, Jr., although there is nothing in the record indicating that he himself harassed her after the assault. <u>See</u> Sally Dep. ¶¶ 20-21; Sally Aff. ¶¶ 4-6.  The experience of seeing Porto, Jr. and being harassed by his friends, "was very upsetting" to Sally Doe and made her "school year very hard." <u>See</u> Sally Aff. ¶ 7.

Defendant claims that if Sally Doe was teased, harassed, or subject to contact with Porto, Jr., she made no complaints to the Derby school system.  <u>See</u> Rule 56(a)1 ¶ 9; DiCenso Aff. ¶ 9. Further, although her affidavit claims otherwise, Sally Doe testified in her deposition that she was not subjected to, and never complained of, harassment during the 2002-2003 school year. <u>See</u> Sally Dep. at 20-21, 29-30.

After finishing eighth grade at Derby Middle School, Sally Doe transferred to Platt Vocational School, not a part of the Derby school system.  <u>See</u> Sally Aff. ¶ 8.  Sally Doe's affidavit claims that she transferred schools to escape harassment and

contact with Porto, Jr.  See id.  She testified at her deposition that she transferred to get away from the "stuck-up and fake" girls at Derby High, and to meet new people and new friends.  See Sally Dep. at 19-20.  Porto, Jr. was eventually expelled from Derby High School before the 2003-2004 school year, after being arrested for sexually assaulting another female student. See John Aff. ¶ 8.

## II.  Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Materiality is determined by the substantive law that governs the case, and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Where the record taken

6

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In moving for summary judgment against the party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  See Celotex, 477 U.S. at 322-23.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  Anderson, 477 U.S. at 249 ("[T]here

7

is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. <u>Matsushita</u>, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. <u>Id</u>. at 586; <u>see also</u> <u>Knight v. U.S. Fire Insurance Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986) ( A non-moving party's "mere speculation or conjecture as to the true nature of the facts" will not, by itself, defeat a motion for summary judgment).

## III. Discussion

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Recipients of federal funding, like the Derby Board of Education, may be liable for damages under Title IX for student-on-student sexual harassment. <u>See</u> <u>Davis v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 653 (1999).

There is no dispute that defendant receives federal funding and is therefore liable for Title IX student-on-student sexual harassment.  The issue before the Court is whether plaintiff has proffered sufficient evidence on each element of a Title IX claim to survive summary judgment.

In <u>Davis</u>, the Supreme Court established that a Title IX claim based on student-on-student harassment is supported when the plaintiff demonstrates the following elements: 1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; 2) the funding recipient had actual knowledge of the sexual harassment; and 3) the funding recipient was deliberately indifferent to the harassment.  <u>See</u> <u>Vance v. Spencer Cty. Pub. School Dist.</u>, 231 F.3d 253, 258-59 (6th Cir. 2000) (citing <u>Davis</u>, 526 U.S. at 633); <u>see also</u> <u>Kelly v. Yale Univ.</u>, No. 3:01-CV-1591 (JCH), 2003 WL 1563424, at *1, *4 (D. Conn. Mar. 26, 2003). Title IX liability for student-on-student harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs."  <u>Davis</u>, 526 U.S. at 645.

A.   Severity of Harassment

There is no dispute that student-on-student sexual assault
can constitute sexual harassment for Title IX purposes.  See
Soper v. Hoben, 195 F.3d 845, 855 (6th Cir. 1999) (victim's
allegations of rape, sexual abuse and harassment qualify as
severe, pervasive, and objectively offensive sexual harassment);
Kelly, 2003 WL 1563424, at *3 (plaintiff's allegations of rape
constitute severe and objectively offensive sexual harassment).
Here, even though the defendant Board could not be liable for the
rape of Sally Doe, see infra at 15, it could still be liable for
deliberate indifference to known post-assault harassment "in a
context subject to the school district's control," if the
harassment was "so severe, pervasive, and objectively offensive
that it can be said to deprive [plaintiff] of access to the
educational opportunities or benefits provided by the school."
Davis, 526 U.S. at 645, 650; Kelly, 2003 WL 1563424, at *3.

The evidence shows that Porto, Jr. was permitted to continue
attending school in the same building as Sally Doe after the
assault, leaving open the constant potential for interactions
between them, and indeed Sally Doe states in her affidavit that
she saw Porto, Jr. frequently during the school year.  Sally Aff.
¶¶ 4-7; John Aff. ¶¶ 5-6.  She also testifies that Porto, Jr.'s
friends harassed her on several occasions.  Sally Aff. ¶¶ 6-7.

10

For the reasons that follow, this evidence could support a reasonable jury conclusion that these circumstances rose to the level of "severe, pervasive, and objectively offensive" under Davis.

In Kelly, the plaintiff, a sexual assault victim, continued to attend Yale Divinity School with her attacker.  Although she had no interactions with, and was not harassed by, her attacker after the assault, his "presence on campus and the accompanying risk that she might encounter him created a hostile environment that effectively deprived her of the educational opportunities or benefits provided by the school."  Kelly, 2003 WL 1563424, at *3. The court held that a reasonable jury could find that "following the assault, [the attacker's] presence on campus was harassing because it exposed her to the possibility of an encounter with him."  Id.  In similar fashion, Sally Doe was constantly exposed to a potential encounter with her assailant because Derby High School and Middle School were housed in the same building such that students from each could readily come in contact with each other.  In fact, Sally Doe's affidavit states that she saw Porto, Jr. many times during the school year and that the experience of seeing him "was very upsetting" and made the "school year very hard."  See Sally Aff. ¶¶ 5, 7.  Thus, even absent actual post-assault harassment by Porto, Jr., the fact that he and plaintiff

11

attended school together could be found to constitute pervasive, severe, and objectively offensive harassment.

In addition to the evidence that Sally Doe saw Porto, Jr. in school, there is also the evidence that his friends harassed her off of school grounds.[1]  Sally Doe testified in her deposition that Porto, Jr.'s friends would harass her every time she "saw him."  <u>See</u> Sally Dep. at 29-30.  While it is not clear who "him" refers to, a reasonable jury could infer that "him" referred to Porto, Jr.  The friends would allegedly drive by Sally Doe in a blue truck and call her a "slut".  She states that this harassment occurred more than once, although she cannot name any of the people in the blue truck.  That she was harassed by Porto, Jr.'s friends, even if on his behalf, off school grounds, is not actionable because <u>Davis</u> mandates that the Board cannot be liable for any deliberate indifference to harassment in a context over which the Board does not have control.[2]  However, as considered below, this evidence of "proxy-harassment" does bolster

---

[1] As noted, <u>supra</u>, Sally Doe's affidavit stating that she was also harassed by Porto Jr.'s friends <u>in</u> school cannot be used to create a factual dispute as it directly contradicts her deposition testimony that Porto Jr.'s friends harassed her out of school only.

[2] It also appears undisputed that the Board was never given notice of any such "proxy-harassment."  <u>See</u> Sally Dep. at 21; Dicenso Aff. ¶ 9.

plaintiff's claim concerning the severity and offensiveness of having to go to school in the same building as Porto, Jr.

Plaintiff must be able to demonstrate that the circumstances were sufficiently pervasive, severe, and objectively offensive to "effectively deprive[] her of 'the educational opportunities or benefits provided by the school.'" Kelly, 2003 WL 1563424, at *1, *3 (quoting Davis, 526 U.S. at 650). Plaintiff claims as a result of the potential for seeing and/or interacting with Porto, Jr., she transferred out of the Derby school system after eighth grade. See Sally Aff. ¶ 8. John Doe testified that "Sally, she was, she didn't say too much but she was getting harassed at Derby High School so I transferred her to Platt Tech in 9th Grade. . . . She came home every day and she was miserable so I know - she really wouldn't tell me what was going on but I just assumed that, you know, she was getting some shit, you know." See Deposition of John Doe ("John Dep.") [Doc. 30-5] at 15. Sally Doe gives alternative reasons for leaving the Derby school system, although she does not contradict her father's account that the post-assault situation at school factored into her decision to transfer. Indeed, she states in her affidavit that going to school in the same building as Porto, Jr. pushed her into transferring to Platt Tech. See Sally Aff. ¶ 8. But she also explained at deposition that she wanted to leave Derby

13

High School because the girls there "act really nice to your face
and then talk about you. . . . Oh, they just talk, I don't know.
They weren't saying anything bad it's just I don't like them - I
didn't like the girls.  I went to Platt Tech so I could meet new
people, I did not want to stay with all of those stuck up girls."
<u>See</u> Sally Dep. at 19.

Despite defendant's argument to the contrary, there is
minimally sufficient evidence from which a reasonable jury could
conclude that going to the same school as Porto, Jr. played a
role in Sally Doe's decision to transfer out of Derby High
School, thus depriving her of its educational opportunities or
benefits.  As noted above, the proxy-harassment by Porto, Jr.'s
friends, while not actionable, supports plaintiff's claim that an
interaction with Porto, Jr., like her interactions with these
friends, would be sufficiently distressing or threatening such
that the fact of their continued mutual presence in the same
building and concomitant possibility of potential interaction
impacted her decision to transfer.  Moreover, John Doe's
testimony about Sally Doe's behavior preceding her transfer is
uncontradicted, and while Sally Doe points to additional reasons
why transfer was attractive to her, she also states that "[her]
experiences having to go to that school while Porto was there,

14

with his friends, made me want to leave the school and in fact I did eventually leave."   <u>See</u> Sally Aff. ¶ 8.

Thus, plaintiff has presented genuine issues of material fact with respect to the first element of the <u>Davis</u> test.

B.   <u>Notice to Derby Board of Education</u>

While the Board may be liable for the post-assault school situation, there is no dispute that the Board did not receive notice of Porto, Jr.'s sexual assault of Sally Doe until <u>after</u> the rape took place and therefore, under <u>Davis</u>, the Board cannot be held liable for the sexual assault itself.  <u>See Davis</u>, 526 U.S. at 642, 649 (actual and adequate notice of harassment required before liability is triggered); <u>Reese v. Jefferson School Dist. No. 14J</u>, 208 F.3d 736, 740 (9th Cir. 2000) (defendant school board not liable for harassment that occurred before plaintiff reported conduct to the school); <u>Kelly</u>, 2003 WL 1563424, at *1, *3 (defendant University not liable for an off-campus sexual assault that occurred before plaintiff reported any harassment).

When the Board received notice of the sexual assault remains in dispute, although plaintiff contends that the Board became aware of the assault through the substantial media attention devoted to the investigation and arrest of Porto, Jr. in the summer of 2002 and potentially even earlier because Porto, Jr.'s

15

father was a member of the Board.  Whether defendant had actual
knowledge of the assault before the 2002-2003 school year began,
or only after it started when John Doe complained, could have
significance to the jury in deciding whether defendant's response
amounted to deliberate indifference.

"Although the actual knowledge standard has been applied
repeatedly by courts since Gebser v. Lago Vistal Indep. Sch.
Dist., 524 U.S. 274 (1998), its contours have yet to be fully
defined." Tesoriero v. Syosset Central School District, 382 F.
Supp. 2d 387, 397 (E.D.N.Y. 2005) (internal quotations omitted).
"Accordingly, it is difficult to define what kind of notice is
sufficient." Id. (internal quotations omitted).  Defendant argues
that actual notice as set forth in Davis and Gebser requires an
actual complaint of sexual harassment by the victim or a member
of the victim's family to a school administrator.  Defendant
argues that Title IX liability does not accrue simply because the
Board should have known of the sexual assault through the news
media.  "But most courts agree that '[o]n the other hand, the
actual notice standard does not set the bar so high that a school
district is not put on notice until it receives a clearly
credible report of sexual abuse from the plaintiff-student.'"
Tesoriero, 382 F. Supp. 2d at 397 (quoting Doe v. Sch. Admin.
Dist. No. 19, 66 F. Supp. 2d 57, 63 (D. Me. 1999)).

The record on this motion demonstrates a triable issue of fact as to when the Board received actual notice of the sexual assault, as the starting point for measuring the adequacy of its response.  The nature and extent of media coverage of the arrest of Porto, Jr. may be evidence from which actual notice could be inferred.  The circumstances of Porto, Jr.'s father's knowledge of his son's arrest for assault on a student of a school for which he serves as a member of the Board of Education could also provide a basis for a reasonable jury to conclude that the Board had actual knowledge of the sexual assault before John Doe met with Principal DiCenso.  Thus, plaintiff has proffered sufficient evidence from which a jury could conclude that the Board received actual notice of the sexual assault before the 2002-2003 school year began, yet failed to take any disciplinary action until Principal DiCenso met with John Doe in mid-September.  Moreover, even if the jury concludes that the Board did not have notice of the incident until Dicenso's meeting with John Doe, as discussed below the evidence could nevertheless support a conclusion that even after this meeting the Board acted with deliberate indifference to the situation of plaintiff attending school in the same building as Porto, Jr.

C.   Deliberate Indifference

There being evidence in the record from which it could be

found that defendant had actual notice of the sexual assault at some point, the central issue becomes whether defendant's response, or lack thereof, could be found to amount to deliberate indifference.  Title IX is violated when a federal funding recipient's response to known harassment amounts to "deliberate indifference to discrimination."  See Hayut v. State Univ. of N.Y., 352 F.3d 733, 751 (2d Cir. 2003) (quoting Gebser, 524 U.S. at 290).  "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when remedial action only follows after a lengthy and unjustified delay."  Id. (internal citations and quotations omitted).  "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  Davis, 526 U.S. at 645.  "Deliberate indifference is more than a mere reasonableness standard that transforms every school disciplinary decision into a jury question."  Tesoriero, 382 F. Supp. 2d at 398 (internal quotations omitted).  However, deliberate indifference will often be a fact-based question, for which bright line rules are ill-suited.  See id.

In this case, plaintiff proffers sufficient evidence to permit a finding that the Board's response was unreasonably

delayed and inadequate so as to constitute deliberate indifference by making Sally Doe vulnerable to harassment.

First, the evidence that the Board took no disciplinary action whatsoever against Porto, Jr. until mid-September 2002 could be a component of a jury finding of deliberate indifference, depending on the jury's determination of when the Board received actual notice of the assault.

Additionally, the action the Board ultimately took also could be questioned as inadequate:  Porto Jr.'s brief suspension, after which the Board allowed him to remain in school exposing Sally Doe to the potential for emotional encounters and harassment, could be found to constitute deliberate indifference. In this context the Court notes that the fact that Porto, Jr. was not actually expelled is not necessarily indicative of defendant's inaction or deliberate indifference.  "A victim of peer harassment does not have the right to any particular remedial demand, immediate expulsion of her alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused, Title IX requires that the school make an effort to remedy known peer harassment in a manner that is not 'clearly unreasonable.'"  Kelly, 2003 WL 1563424, at *4 (citing Davis 526 U.S. at 648-49).  However, the Board's failure to even consider expulsion, especially in the

conflicted context of the assailant's father serving as a member of the Board, could give rise to an inference that the Board's reliance on Sally Doe's refusal to provide a statement to it was a pretext for protecting the son of a member of the Board, particularly where there was no statute requiring a victim statement,[3] the Board had the Derby Police reports available to it, and the Board did not know whether Sally Doe would testify if an expulsion hearing was held.[4]  Moreover, as Porto, Jr. was expelled after he was arrested for allegedly sexually assaulting another student sometime during the 2002-2003 school year,[5] the defendant Board would appear pressed to dispute that expulsion for such conduct was a reasonable result, leaving a jury to question whether its response to Sally Doe's assault was

---

[3] While defendant notes that before it can expel a student other than for conduct involving deadly weapons or drugs on school grounds, a hearing is required to provide the student due process, see Conn. Gen. Stat. § 10-233d, defendant points to no statute or other policy, and the Court has found none, requiring that the accuser participate in such hearing (or related investigation).

[4] A jury could also conclude that Sally Doe's refusal to provide a statement directly to the Board on which the father of her assailant sat, particularly when she had already cooperated in the Derby Police Department investigation, was justifiable.

[5] John Doe states that Porto, Jr. was arrested for assaulting another student and "at that time" was taken out of school.  John Aff. ¶ 8.

20

indifferent and due, at least in part, to the fact that Porto, Sr. was a member of the Board.

Further, even apart from the possibility of expulsion, the Board made no other efforts to reduce Sally Doe's vulnerability to traumatic interactions with her attacker or to otherwise reach out to her to offer protection. Indeed, given the circumstances – including the fact of the assault, Sally Doe's youth, and her proximity to Porto, Jr. at school – a jury could conclude that the Board should have known, even absent a specific complaint from Sally Doe or her father, that this was a particularly risky situation necessitating its attention.

Thus, there is evidence from which a jury could reasonably conclude that the Board's conduct following its notice of Sally Doe's sexual assault amounted to deliberate indifference.

## IV.  Conclusion

Thus, plaintiff has presented triable issues of fact for each element of her Title IX claim arising out of student-on-student sexual harassment. The possibility that Sally Doe would interact with her alleged assailant could be seen as objectively severe; a reasonable jury could also find that the Board had actual knowledge of the sexual assault, even prior to the start of the 2002-2003 school year; and finally, the fact that the Board failed to discipline Porto, Jr. until after John Doe

21

complained, and then only suspended him for ten days and did not pursue expulsion, could be seen as acting with deliberate indifference to known harassment.  Therefore, there are triable issues of fact and defendant Board is not entitled to summary judgment as a matter of law.  Defendant's summary judgment motion [Doc. # 22] is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

**Dated: New Haven, Connecticut, this 15th day of September, 2006.**